In the Matter of FRANCES KAHN and PATSY SENZARINO, Appellants, v. J. EDWIN LA VALLEE, as Warden of Clinton Prison, et al., Respondents. In the Matter of VINCENT MUMMIANI, Appellant, v. J. EDWIN LA VALLEE, as Warden of Clinton Prison, Respondent. In the Matter of FRANCES KAHN and WAYNE T. LONERGAN, Appellants, v. PAUL D. McGINNIS, as Commissioner of Correction of the State of New York, et al., Respondents.— The petitioners in the above-entitled cases appeal from orders denying their applications for orders compelling respondents to allow them to confer privately with Frances Kahn, an attorney. It appears that while attorney Kahn was allowed to consult with the petitioners in Clinton Prison, she was not allowed to converse privately as a guard was stationed within hearing distance during the consultations. There are identical issues in all three appeals. The Warden of a State prison is responsible for the supervision and management of the prison and its inmates subject only to the control of the Commissioner of Correction (Correction Law, §§ 18, 112). Section 146 of the Correction Law which reads as follows specifically covers visitations: " The following persons shall be authorized to visit at pleasure all state prisons: The governor and lieutenant-governor, superintendent of standards and purchase, secretary of state, comptroller and attorney-general, members of the commission of correction, members of the legislature, judges of the court of appeals, supreme court and county judges, district attorneys and every minister of the gospel having charge of a congregation in the town wherein any such prison is situated. No other person not otherwise authorized by law shall be permitted to enter a state prison except under such regulations as the commissioner of correction shall prescribe. The provisions of this section shall not apply to such portion of a prison in which prisoners under sentence of death are confined." There is no doubt that the Warden and the Commissioner are given broad powers and necessarily so. Equally important, however, is a prisoner's right to counsel and to due process of the law. In passing upon these appeals it is necessary to examine the facts. Petitioner Kahn on August 11, 1959 wrote the Warden of Clinton Prison that she wished to interview 34 inmates in a space of a day and a half. There is no statement in the letter that she was under retainer. There is no statement of the purpose of her consultation. When she arrived at the prison she showed no retainer agreement. No proper foundation was laid by petitioner Kahn for her later demand for a private interview. Certainly in a maximum security prison such as Clinton Prison, under these facts, the Warden was fully justified in requiring that these interviews be conducted subject to the presence of a guard in the room where petitioners met in order to insure against any impropriety or infractions of prison rules and regulations. Indeed, the request was so unreasonable, we would normally expect a refusal from the Warden instead of a gracious attempt to comply. We are quite sure that upon a reasonable request for interviews at reasonable intervals, upon a proper showing of a retainer, a private interview would be arranged by the Warden, even in connection with a post conviction proceeding. While we are not reaching or deciding herein the question of

whether in a proper case the court would order a Warden to allow a private interview in a post conviction remedy case such as *coram nobis,* it would seem that the same justifications for a private interview exist (although there appears to be no authority for same) as in those cases where the petitioner is an accused, and is facing a trial. (See *People* v. *Cooper,* 307 N. Y. 253; *People* v. *McLaughlin,* 291 N. Y. 480; *Matter of Fusco* v. *Moses,* 304 N. Y. 424.) Orders unanimously affirmed, without costs. Present — Bergan, P. J., Coon, Gibson, Herlihy and Reynolds, JJ.