*248 OPINION OF THE COURT
Joseph J. Dawson, J.
Defendant Reginald Swinton moves pro se pursuant to CPL 440.10 (1) (h) to vacate a judgment dated September 5, 1975 convicting him, after a plea of guilty on May 13, 1975, of rape in the first degree, and sentencing him to a prison term of from 5 to 15 years. In addition, Swinton seeks forensic testing of any rape kits or clothing related to his case that may contain deoxyribonucleic acid (DNA) pursuant to CPL 440.30 (1-a). Finally, Swinton seeks a temporary injunction directed at unnamed persons to prevent any “outside questioning” of him concerning this matter pending resolution of the motion. For the reasons set forth below, the motion is denied in its entirety.
The gravamen of Swinton’s motion is that his plea was involuntary on the theory that the trial court denied Swinton his Sixth Amendment right to counsel, that the plea was the result of ineffective assistance of counsel who failed to have defendant’s mental competency evaluated or advise him on the use of a possible affirmative defense, and that the terms of the plea were not clearly placed on the record and were not subsequently kept. (See affidavit of Reginald Swinton sworn to Apr. 28, 2007 1Í1I 5-7.)
Statement of Facts
In December 1974, Swinton was charged by indictment No. 3109/1974 and by indictment No. 3201/1974 with three counts of rape in the first degree, two counts of attempted rape in the first degree, three counts of sodomy in the first degree, two counts of robbery in the first degree, two counts of burglary in the first degree, and 17 lesser charges arising out of incidents involving five different women on five different occasions. (See affirmation of Assistant District Attorney Bryan C. Hughes dated Aug. 7, 2007 1111 4-5.) In connection therewith, Swinton was represented by retained counsel, the firm of Rothblatt, Seijas and Peskin, by Robert A. Sackett, Esq. (now Justice Sackett, Supreme Court, Sullivan County). (See defendant’s appendix, exhibit 1 at 2.)
The two indictments were consolidated for trial and Wade hearings commenced on May 7, 1975 before Justice Quinn. (Id.) On May 12, the day the trial was to commence, defense counsel advised the court that Swinton had agreed to plead guilty to one count of rape in the first degree in exchange for a sentence of from 5 to 15 years’ imprisonment to cover both indictments, a *249 pending matter in Bronx Criminal Court (docket No. X5114851), and any other pending criminal cases or investigations in Bronx County, other than class A felonies. (See defendant’s appendix, exhibit 4 at 1-6.) During the plea allocution, Swinton admitted to the rape and acknowledged the consequences of the change of plea, but claimed at the end of the allocution that he was innocent. (Id. at 7-13.) The court refused to accept the plea. (Id. at 13-14.) Swinton then asked for a change of counsel, which was denied. (Id. at 14-15.)
Following the luncheon recess, defense counsel asked to be relieved because Swinton no longer trusted him and because counsel felt that he could no longer trust himself due to his efforts to get Swinton to plead guilty and his lack of preparation for trial. (Id. at 17-21.) The trial court denied the application on the grounds that it was merely a ploy to delay the trial and because Swinton’s attorney had demonstrated exceptional ability. (Id. at 22-24.) The trial court then denied the Wade motion, sent for a jury, and seated one juror. (See defendant’s appendix, exhibit 1 at 6.)
The next day, after conferring with Swinton for almost two hours, defense counsel advised the court that Swinton wished to avail himself of the plea bargain discussed earlier. (See defendant’s appendix, exhibit 4 at 26-27.) Swinton was sworn in and during the plea allocution acknowledged discussing the case with his counsel, his mother and fiancée; that he understood the consequences of his guilty plea; that he committed rape in the first degree; that he waived certain constitutional rights; and that he was not coerced into pleading guilty. (Id. at 28-34.) The trial court further stated that it would not accept a guilty plea from an innocent man, and that it would only accept the guilty plea if Swinton would again admit to committing the crime of rape in the first degree. Swinton admitted that he did so. (Id. at 34.) The matter was adjourned for sentencing.
On the date of sentence, August 6, 1975, new retained counsel, Stephen Hyman of the firm of Kunstler, Kunstler, Hyman and Goldberg, appeared on behalf of Swinton. (Id. at 40.) Swinton had obtained new counsel to apply to the court to withdraw his previously entered plea of guilty. (Id. at 40-41.) The court indicated that it would consider affording a hearing to Swinton on the question of the voluntariness of his plea without formal motion papers. Said hearing occurred later that same day with Swinton’s new attorneys after speaking with a representative of Swinton’s prior attorneys. (Id. at 42-57.)
*250 Following oral argument on the application, Swinton testified on his own behalf at the hearing. (Id. at 58-78.) In response to the question of whether his plea was voluntarily made, Swinton replied “[n]ot really” (id. at 79), and testified that he did not want to go to trial with his prior attorney, who repeatedly counseled him to accept the plea. (Id. at 78-89.) On cross-examination, Swinton acknowledged that he had been sworn under oath on May 13, that he had not been truthful during the plea allocution, but that he was just repeating yes or no answers given to him by counsel. (Id. at 89-91.) Swinton then stated that he knew what questions he was answering, but later claimed he was not even listening to the judge’s questions. (Id. at 91-92.) Swinton testified that all he did was say “yes, yes, yes, yes,” but then acknowledged answering some questions in the negative, including whether he was coerced into pleading guilty. (Id. at 92-98.) Ultimately, the court denied his application to vacate the plea on the grounds that Swinton was not credible, and sentenced him to from 5 to 15 years’ imprisonment in accordance with the plea agreement. (Id. at 108.) Swinton was resentenced to serve the same term of imprisonment in a different correctional facility on September 5, 1975. (See defendant’s appendix, exhibit 4 at 117-134.)
Swinton appealed the conviction through his new counsel. Swinton’s appellate brief asserted that his plea of guilty should have been vacated because his plea was coerced due to the alleged violation of his Sixth Amendment right to counsel. (See defendant’s appendix, exhibit 1 at 9-10.) Specifically, Swinton claimed on appeal that his Sixth Amendment right to counsel was violated because of the trial court’s refusal to permit Swinton to substitute counsel on the eve of trial, resulting in a coerced plea. (Id. at 11-20.) The Appellate Division, First Department, affirmed the judgment of conviction without opinion. (See People v Swinton, 52 AD2d 1098 [1st Dept 1976].) Leave to appeal to the Court of Appeals was denied. (See defendant’s mem of law at 10.)
In the intervening years, Swinton did not seek any other relief with respect to this conviction. (See Swinton affidavit ¶10.) Swinton has, however, had numerous contacts with the criminal justice system. In 1980, Swinton was convicted after a jury trial of burglary in the second degree and sentenced to one year in prison. In 1986, Swinton was convicted after a jury trial of robbery in the first degree and burglary in the first degree and sentenced to from 121/2 to 25 years’ imprisonment. In 2007, *251 Swinton was convicted after a jury trial of two counts of rape in the first degree, three counts of criminal sexual act in the first degree, two counts of robbery in the third degree, one count of attempted robbery in the third degree, and three counts of burglary in the second degree. In that case, Swinton was sentenced to a term of imprisonment from 125 years to life. (See Hughes affidavit 111110, 12-13, 25-27.)
On the instant application, Swinton asserts his innocence, but, in the past, has acknowledged committing the rape in other legal proceedings. For example, in a 2003 appearance before the Board of Parole, Swinton explained the rape by stating that a girlfriend had humiliated him, and that “I got really tired of being hurt and I just lashed out . . . and that’s the consequence of that . . . that was an isolated incident in time.” (See Hughes affidavit, exhibit 8 at 7-8.) In addition, on an appeal to the Appellate Division, First Department, from an adverse determination of Swinton’s risk level assessment pursuant to the Sex Offender Registration Act, Swinton’s appellate brief argued that Swinton “did accept responsibility for his crime” — namely, the rape. (See Hughes affidavit, exhibit 11 at 14-15.)
Legal Analysis
The court “must deny” a motion to vacate a judgment where the “ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment” (CPL 440.10 [2] [a]). That is the case here. Swinton appealed the conviction, claiming that the trial court erred when it denied the motion to withdraw his plea, and that his plea was coerced due to the purported denial of his Sixth Amendment right to counsel. (See defendant’s appendix, exhibit 1.) The First Department rejected this argument without opinion (52 AD2d 1098 [1st Dept 1976]), and leave to appeal to the Court of Appeals was denied. (See defendant’s mem at 10.) Since Swinton has previously appealed the judgment of conviction on the same grounds and issues as are raised in the current motion, the motion “must be” denied pursuant to CPL 440.10 (2) (a). (See People v Skinner, 154 AD2d 216, 221 [1st Dept 1990], Iv denied 76 NY2d 796 [1990].) Further, review of plea bargains is typically barred by CPL 440.10 (2) (c), as they are record-based. (See People v Cooks, 67 NY2d 100, 104 [1986]; People v Jackson, 266 AD2d 163 [1st Dept 1999], Iv denied 94 NY2d 921 [2000].)
Swinton attempts to circumvent this bar by claiming that there has been a retroactive change in the law controlling the *252 issue since the appellate determination. (CPL 440.10 [2] [a].) Specifically, Swinton asserts that the case of United States v Gonzalez-Lopez (548 US 140, 126 S Ct 2557 [2006]) created a retroactive change in the right to counsel guaranteed by the Sixth Amendment. The scope of the right to counsel has long been defined by both the state and federal courts. Under the Sixth Amendment to the United States Constitution and under article I, § 6 of the New York State Constitution, “a defendant has the right to defend in person or by counsel of his own choosing.” (People v McLaughlin, 291 NY 480, 482 [1944] [emphasis added].) A “defendant’s right to counsel of his own choosing includes the right to change counsel at any time, without good cause, for any reason, or for no reason, if such change of counsel does not unreasonably interfere with the orderly course of the trial.” (People v De Chiaro, 48 AD2d 54, 56 [3d Dept 1975] [emphasis added].) Thus it has long been established that the right to substitute counsel “cannot be invoked to delay the course of justice.” (Id. at 57.) Indeed, the Supreme Court in Gonzalez-Lopez “recognized a trial court’s wide latitude in balancing the right to counsel of choice against. . . the demands of its calendar.” (548 US at —, 126 S Ct at 2565-2566.) Thus, on the eve of trial, “absent exigent and compelling circumstances, a court may, in the exercise of its discretion, deny a defendant’s request to substitute counsel . . .if the defendant has been accorded a reasonable opportunity to retain counsel of his own choosing before that time.” (People v Arroyave, 49 NY2d 264, 271 [1980].) At that point, “it is incumbent upon the defendant to demonstrate that the requested adjournment has been necessitated by forces beyond his control and is not simply a dilatory tactic.” (Id. at 271-272.) Against this background, Swinton asserts that Gonzalez-Lopez constitutes a controlling change of law that requires vacatur of the plea. The court disagrees.
In Gonzalez-Lopez, the District Court denied the defendant his right to choice of counsel by erroneously refusing to admit the defendant’s first choice of attorney pro hac vice. (548 US at —, 126 S Ct at 2560-2561.) The government conceded the error before the United States Supreme Court, but claimed that the error must also have prejudiced the defendant. (548 US at —, 126 S Ct at 2561-2562.) The Supreme Court, however, found the error to be a structural one that was not subject to harmless error analysis and required automatic reversal of the conviction. (548 US at —, 126 S Ct at 2562- *253 2565. ) In so holding, the Supreme Court was careful to point out that its ruling was predicated on the government’s concession and was limited to whether the error should be reviewed under harmless error analysis or whether it was a structural error requiring per se reversal. (548 US at —, 126 S Ct at 2565-2566. ) Indeed, the Supreme Court stated that “[n]othing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice . . . .” (548 US at —, 126 S Ct at 2565.)
Thus, Gonzalez-Lopez did not affect the scope of the Sixth Amendment right to counsel; rather, it merely clarified whether such error was subject to harmless error analysis. (See United States v Hashmi, — F Supp 2d —, —, 2008 WL 216936, *6, 2008 US Dist LEXIS 3801, *17 [SD NY, Jan. 16, 2008] [stating that a “careful reading of Gonzalez-Lopez demonstrates that it is a case more about harmless error review than about defining the content to the right to choice of counsel”]; Report and Recommendation of U.S. Magistrate Judge S. Gold, reprinted following Persad v Conway, 2008 WL 268812, *8 [ED NY, Jan. 30, 2008] [stating that Gonzalez-Lopez merely “reiterated that the right to choose particular counsel is not absolute” (emphasis added)].) Accordingly, it cannot be said that the scope of a defendant’s right to counsel under the Sixth Amendment has changed since Swinton originally pleaded guilty and appealed his conviction. Indeed, Swinton’s brief on direct appeal and his brief on the instant application cite to some of the same legal authorities to support the claim that Swinton’s right to counsel was violated (e.g. People v De Chiaro, 48 AD2d 54 [3d Dept 1975]; compare defendant’s appendix, exhibit 1 at 11-14, with defendant’s mem at 16). Accordingly, this argument by Swinton is barred by CPL 440.10 (2) (a) and must be denied.
Swinton’s other claims are denied as well. To the extent Swinton claims that his counsel was ineffective for failing to advise him regarding a potential affirmative defense or to request a competency hearing, no facts of an evidentiary nature are set forth to establish what defense was purportedly available to Swinton or that Swinton was not legally competent (indeed, Swinton’s last three trials resulted in convictions, not findings that he was incompetent). Thus, this branch of the motion is denied pursuant to CPL 440.30 (4) (b), as is Swinton’s claim that the terms of his plea bargain were not kept. Next, Swinton’s request to have DNA testing performed is denied pursuant to CPL 440.30 (1-a). Under that section, relief is available *254 to defendants who have been convicted at trial, but not to defendants who have pleaded guilty. (See People v Allen, 47 AD3d 533 [1st Dept 2008].) Finally, Swinton’s application for injunctive relief is denied as he has not demonstrated any entitlement to such an extraordinary remedy. (See Cox v J.D. Realty Assoc., 217 AD2d 179, 181 [1st Dept 1995].)